UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT DAVID WESSON,              No. C 07-1437 SI (pr)

    Petitioner,                  **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

    v.

KEN CLARK, Warden,

    Respondent.
                                         /

## INTRODUCTION

This matter is now before the court for consideration of the merits of Robert David Wesson's pro se petition for writ of habeas corpus concerning his conviction in the Santa Clara County Superior Court. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Following a jury trial in Santa Clara County Superior Court, Wesson was convicted of sodomy by force, inflicting corporal injury on a cohabitant, making criminal threats, and attempting to dissuade a witness. See Cal. Penal Code §§ 286(c)(2), 273.5(a), 422, 136.1(b)(2). In a bifurcated trial, the court found that Wesson had served a prior prison term, had suffered a prior sex offense conviction under the One Strike law, and had two prior serious felony convictions under the Three Strikes law. See Cal. Penal Code §§ 667.5(b), 667.61(a), 1170.12(c)(2). The trial court sentenced Wesson to 102 years to life in prison.

Wesson appealed. The California Court of Appeal affirmed the conviction in a reasoned opinion. The California Supreme Court denied his petition for review. Wesson then filed his federal petition for writ of habeas corpus.

The California Court of Appeal described the facts:

Defendant and the victim S.D. met at a Narcotics Anonymous meeting in 2001. They became romantically involved and began living together a few months later. Within a year, defendant began choking, hitting and spitting at S.D., and, on one occasion, he dragged her by the hair down a flight of cement stairs. Defendant's violence was sometimes triggered by S.D.'s use of drugs. S.D. reported this abuse to a physician at Planned Parenthood in 2002. However, she did not leave defendant, because she loved him, he promised to change, and she depended on his financial support.

When defendant began assaulting her almost every day, S.D. decided to look for another place to live. On the morning of November 25, 2003, S.D. was packing some boxes while defendant was at work. Defendant returned unexpectedly at noon, and he told her that he was checking to see if she was with another man. He threw the boxes at her, saying, "You're not going anywhere. I'm not going back to work, and I'm going to stay here and terrorize you all day." He also took her purse, car keys, and cell phone, and disabled her car. Defendant then dragged her by the hair out the front door, down the street to the driveway, and to the garage. After he ordered her to put away the boxes, she did. He also slapped, kicked, choked, and spit on her.

When they returned to the house, defendant pushed S.D. into the bedroom. He said, "I'm going to give you what you deserve," and that he was going to sodomize her. S.D. repeatedly stated, "Please don't. No." Nevertheless, defendant removed her pants and underwear, sodomized her, and put his fingers in her vagina. When he finished, she wiped herself with a tissue and threw it on the bedroom floor.

After S.D. got dressed, she pretended to be nice to defendant, and told him that she needed to go to the store for cigarettes. Defendant made her car operable and told her that if she was not back in 15 minutes he would beat her. S.D. drove to a friend's house and called 911. When she made the call, S.D. was crying and "in shock," because this was the first time that defendant had raped her. The 911 operator urged S.D. to remain at her friend's house, but S.D. was afraid that defendant would hurt her if she did not return.

When the police responded to the 911 call, defendant and S.D. were sitting on the front porch. Defendant turned to S.D. in disbelief and said, "You called the cops?" S.D., who was "somewhat hysterical," showed the police where she had been raped. Her statements to the police were consistent with her trial testimony. However, though S.D. told Officer Steve Gibson that defendant pushed her face first into the ground, he did not observe any injuries on her face. He also did not observe any damage to her clothes.

S.D. told the police that she did not want to go to the hospital and did not want to get defendant in trouble. However, the police eventually transported her to the hospital for a sexual assault exam. S.D.'s statements to the nurse, Patricia Weiland, were consistent with her testimony at trial. According to Weiland, S.D. was stressed, angry, agitated, and fearful. S.D. had lacerations on her anus and some bruises, which were consistent with her account of the sexual assault. Weiland also explained that the anal injury was consistent with consensual sex. S.D. told Weiland that she had not used drugs during the previous 96 hours. S.D.'s blood and defendant's semen were found in her

2

rectum and underwear. S.D. also experienced some vaginal bleeding. Weiland saw no marks on S.D. to show that she had been slapped, choked, hit, beaten, or dragged by her hair.

After S.D. returned from the hospital, defendant called her twice from jail. During the first call, he asked her not to "say anything else to the detectives." When he said that their sex was consensual, she said that it was not. He asked her not to say that, because the call was being recorded. He also said, "It was consensual, you were mad at me, that's all. All right? Please." When S.D. stated that she had already given a statement and told them everything, defendant said, "You have to do it again." Defendant called again, and S.D. said that he had raped her. He replied, "Will you please stop it? This phone call is recorded." He again urged her to change her statement to the police. S.D. stated, "You hit me, don't blame it on me." Defendant responded, "I know." He ended the conversation by saying, "Please don't tell them anymore, please just say that you were angry. Please."

Defendant continued to call S.D. after she obtained a restraining order. S.D. did not initially tell the police about defendant's calls, because she did not want him to get in trouble.

. . .

Evidence was also introduced [at trial] to show that defendant had been convicted of forcible oral copulation and sexual battery in 1990. An excerpt from the information for the 1990 offenses, a notice of order to the sheriff that defendant had changed his plea, and an abstract of judgment showing that he had been convicted of these offenses were admitted as evidence.

Exh. 5 at 2-5.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Santa Clara County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been

exhausted for the claims presented in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

/ / /
/ / /
/ / /

4

**DISCUSSION**

A.   Fair Trial by Jury Claim

Wesson claims that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial by jury when it allowed the prosecution to prove his propensity to commit sex offenses based solely on documentary evidence of a prior conviction, without requiring additional evidence of the underlying conduct. Wesson does not challenge the constitutionality of California Evidence Code section 1108, which permits the admission of "evidence of the defendant's commission of another sexual offense" when a defendant is charged with a sex offense.[1] Instead, Wesson claims that a jury must be informed of the underlying facts about a prior sex offense when considering it to show propensity to commit another sex offense. Wesson contends that admission of just the documentary evidence of the prior conviction unfairly deprived the jury of the opportunity to adjudicate the question of propensity, and that the jury was forced to assume that propensity had been proved based on the bare fact of the prior conviction. Although the California Court of Appeal focused its analysis around interpretation of the California Evidence Code, it also implicitly rejected this right to jury trial claim when it affirmed Wesson's conviction. Exh. 5 at 13

The right to jury trial applies to state criminal trials through the Due Process Clause of the Fourteenth Amendment. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968). A state's criminal law (such as an evidence law pertaining to criminal trials) does not violate the Fourteenth Amendment's Due Process Clause "'unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Montana

---

[1] Prior bad acts in sex offense cases come in through the interplay of three California Evidence Code sections. Section 1101 provides, in relevant part: "(a) Except as provided in this section and Section[] . . . 1108, . . . evidence of a person's character or a trait of his or her character . . . is inadmissible when offered to prove his or her conduct on a specified occasion." Section 1108(a), states, in relevant part, that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Section 352 permits the court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

v. Egelhoff, 518 U.S. 37, 43 (1996) (citations omitted). "It is not the State which bears the burden of demonstrating that its rule is deeply rooted, but rather respondent who must show that the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. Id. at 47. Under Egelhoff, Wesson must show that jury knowledge of facts underlying prior conviction is a "fundamental principle of justice." Id. at 43.

Here, Wesson has not made any showing that jury knowledge of facts underlying prior conviction is fundamental to American principles of justice. No such fundamental principle exists. Such a requirement could even violate due process, as the aim of due process is to avoid an unfair trial to the accused. Smith v. Phillips, 455 U.S. 209, 219 (1982). A detailed factual account is generally more prejudicial than documentary proof of a sex offense because the former is more likely to play on a jury's emotions and lead the jury to convict a defendant based on his prior conduct. Thus, a generalized description of a prior sex offense is less detrimental to the right to fair trial than a detailed factual account. Furthermore, if Wesson thought that the facts of his prior offense would have furthered his defense or promoted a fair trial, Wesson remained free to provide information about the factual details of his prior sex offense through his own testimony, the testimony of other witnesses, and the transcript of the preliminary hearing from the prior offense. RT 37. The trial court's decision to admit documents did not foreclose Wesson from presenting evidence of the underlying facts of the prior offense to try to undermine the strength of the prosecution's documentary evidence of propensity. Thus, the trial court's decision to admit evidence of the prior sex offense did not rob the jury of its ability to weigh the strength of the propensity evidence.

Wesson also claims that the admission of the documentary evidence allowed the prosecutor to claim that he had proven propensity when he had not. Wesson claims that this violated due process because it lightened the prosecution's burden of proof. Under the Due Process Clause, the prosecution's burden is to prove beyond a reasonable doubt every element of the charged offense. In re Winship, 397 U.S. 358, 364 (1970). Due process does not require the prosecutor to prove propensity beyond a reasonable doubt because propensity is not an

element of any charged offense. Rather, propensity evidence only helps to show that the defendant is more likely to have committed the actual elements of the charged offense. A prosecutor is free to comment on the strength of the evidence, and to urge the jury to draw desired inferences in closing argument. The comments by the prosecutor that Wesson had a propensity to commit sexual assaults against women did not violate due process.

The admission of the documentary evidence did not violate Wesson's right to a fair trial by jury or any fundamental principle of justice. Because the jury could draw from the evidence the permissible inference that he had the propensity to commit sex offenses when committing the charged acts, the admission of the prior bad act evidence did not violate Wesson's right to due process. See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

There is not much in the way of clearly established law on the propensity evidence question. The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming Alberni). See, e.g., Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law). The state court's decision to admit documentary evidence of Wesson's prior conviction without requiring additional facts about the underlying offense was neither contrary to nor an unreasonable application of federal law.

B.   Confrontation Claim

Wesson claims that the trial court violated his rights under the Sixth Amendment's Confrontation Clause when it allowed documentation of his prior conviction into evidence to

7

prove his propensity to commit sex offenses.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965). The Confrontation Clause applies to all "testimonial" statements, regardless of whether they were made in or out of court. Crawford v. Washington, 541 U.S. 36, 50-51 (2004). Where nontestimonial hearsay is at issue, a state may develop its own evidentiary rules for admissibility, including exemption of such hearsay from Confrontation Clause scrutiny altogether. Id. at 68.

Statements are testimonial "when the circumstances objectively indicate that ... the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006). While the Supreme Court has not articulated a comprehensive definition of testimonial hearsay, it has provided some examples of nontestimonial statements, which include business records. United States v. Cervantes-Flores, 421 F.3d 825, 832 (9th Cir. 2005) (quoting Crawford, 541 U.S. at 56). Government records which existed prior to a criminal prosecution are "much like business records" and are not testimonial because they are "part of a class of documents that were not prepared for litigation" and do not "involve live out-of-court statements against a defendant elicited by a government officer with a clear eye to prosecution." Id. at 832-33 (holding that "certificate of nonexistence of record" was nontestimonial). However, some government documents may be testimonial. For example, affidavits reporting the results of forensic analysis fall into the "'core class of testimonial statements'" described in Crawford. Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527, 2544-45 (2009) (quoting Crawford, 541 U.S. at 54). A government document is nontestimonial when it is not made in anticipation of litigation and is simply a routine, objective cataloging of an unambiguous factual matter. United States v. Ballesteros-Selinger, 454 F.3d 973, 975 (9th Cir. 2006).

The documents to which Wesson objects are an excerpt from the information for the 1990

1 offenses, a notice of order to the sheriff that Wesson had changed his plea, and an abstract of
2 judgment. At least the last two are nontestimonial. The abstract of judgment was prepared on
3 a form that objectively memorialized the unambiguous fact of conviction. CT 177. Similarly,
4 the letter to the sheriff is a notice that merely informed the sheriff that Wesson had pled guilty
5 to charged crimes. CT 176. In light of the fact that neither of these documents were prepared
6 for the purpose of aiding in a later prosecution, they are nontestimonial. Because the abstract
7 of the judgment and the notice to the sheriff are nontestimonial, their admission did not violate
8 the Confrontation Clause. Their admissibility was a question of state evidence law. Here, the
9 California Court of Appeal determined that the documentary evidence was admissible under
10 California Evidence Code sections 452.5 and 1108 as an exception to hearsay. Exh. 5 at 9-10.
11 This court will not disturb the California Court of Appeal's interpretation of California evidence
12 law.[2] See Wainwright v. Goode, 464 U.S. 78, 84 (1983).

13 As for the first document (i.e., the excerpt from the information), this court need not
14 determine whether it is testimonial because any error in its admission was harmless. Holley v.
15 Yarborough, 568 F.3d 1091, 1100 (9th Cir. 2009) (correct inquiry for Confrontation Clause
16 claims is whether the error had a substantial and injurious effect or influence in determining the
17 jury's verdict). The information accused Wesson of committing certain crimes, for which he
18 was subsequently convicted, as indicated on the abstract of judgment. CT 173-175, 177. The
19 excerpt from the information contained similar information to that contained in the abstract of
20 judgment. Id. Any information contained in the excerpt from the information that is additional
21 to that provided in the abstract of judgment is not substantial, and did not have a substantial and
22 injurious effect on the jury's verdict.

23 Wesson also contends that the admission of documents evidencing his prior conviction

---

[2]Wesson argues that the documentary evidence of his prior conviction is inadmissible under Bruton v. United States, 391 U.S. 123 (1968), because it is irrelevant when not considered for the truth of the underlying offense. Because the documentary evidence is admissible under California evidence law as an exception to the hearsay rule, it is admissible for the truth of the matter, i.e., that he had committed the underlying offense. That is highly relevant to show Wesson's propensity to commit sex offenses.

9

was not harmless because the jury was not orally instructed on the law. The record proves Wesson wrong. The jury was orally instructed on the law applicable to this case. RT 709-749, 852-856. More specifically, the judge read CALJIC 2.50 and 2.51 to the jury, which instructed the jury on how to use the evidence of the prior sex offense. RT 721-722.

For the reasons set forth in this section, the state court's decision that Wesson's confrontation right was not violated by the admission of documentary evidence was neither contrary to nor an unreasonable application of federal law.

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: November 23, 2009

SUSAN ILLSTON
United States District Judge